JULIAN W. KNIPPENBERG AND ALICE H. KNIPPENBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent JAMES S. CARROLL AND EDITH M. CARROLL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Knippenberg v. Commissioner
Docket Nos. 2772-72, 3254-72
United States Tax Court
T.C. Memo 1974-311; 1974 Tax Ct. Memo LEXIS 8; 33 T.C.M. (CCH) 1424; T.C.M. (RIA) 740311; December 17, 1974, Filed. William H. Beck, for the petitioners. Robert P. Ruwe, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent has determined the following deficiencies in and additions to the Federal income tax of petitioners: Petitioners
Year
Deficiency
Additions to Tax § 6651(a) [1]
Julian W. and Alice H. Knippenberg
1968
$14,078.44
-
1969
143.94
-
James S. and Edith M. Carroll
1968
11,943.06
$1,100.13
1969
248.03
-
*9 Concessions having been made, it remains for us to decide whether and in what amounts Julian W. Knippenberg and James S. Carroll recognized ordinary income by reason of their each having received five shares of stock in Gribbin Enterprises, Inc. FINDINGS OF FACT We incorporate herein the stipulation of facts and exhibits, appended thereto. Petitioners, the Knippenbergs, and petitioners, the Carrolls, filed joint income tax returns for the years 1968 and 1969 with the district director of internal revenue for Kentucky, and were residents of Lexington, Kentucky, when the petitions were filed herein. Julian W. Knippenberg (Knippenberg) and James S. Carroll (Carroll) [2] were equal partners in the law firm of Carroll and Knippenberg whose place of business was in Lexington, Kentucky. On October 5, 1967, that firm, acting by Carroll, entered into a contract with Eugene L. and Beatrice L. Gribbin (the Gribbins) and Joseph E. Lagrew (Lagrew), the terms of which are set forth below: THIS AGREEMENT, made and entered into this 5th day of October, 1967, *10 by and between BEATRICE L. GRIBBIN and EUGENE L. GRIBBIN, her husband, parties of the first part, JOSEPH E. LAGREW, party of the second part, and JULIAN W. KNIPPENBERG and JAMES S. CARROLL, parties of the third part. WITNESSETH: WHEREAS, first parties desire to have the hereinafter described real property developed by the most advantageous zoning and to be developed and sold or leased for business and/or industry, and with the understanding that first parties shall approve any and all sales and leases of said property by the hereinafter mentioned corporation. WHEREAS, second party has consented to zone and develop said property according to first parties' desire, without cost to first parties, and WHEREAS, third parties have consented to represent first and third (sic) parties and the corporation hereinafter mentioned. NOW THEREFORE, in consideration of the mutual agreement of the parties, it is agreed as follows: 1. Second party shall cause to be filed in the name of the first parties, a petition for a zone change for the hereinafter described property as may be commensurate *11 with the land use plan of the Lexington-Fayette County Zoning Commission. 2. Second party shall organize and form a Kentucky corporation under the name of Gribbin Enterprises, Inc; said corporation shall have 100 shares of non-par stock; and said corportion shall commence business with $1,000.00. 3. The capital shares of the aforementioned corporation shall be divided as follows: (1) Beatrice L. Gribbin and Eugene L. Gribbin, 49 non-assessable shares. (2) Julian W. Knippenberg and/or James S. Carroll, 10 non-assessable shares. (3) Joseph E. Lagrew, 41 assessable shares. 4. Second party shall assume and pay all necessary expenses, except legal expenses, incurred in the zoning, development of said land and organization of said corporation as herein set forth. 5. The third parties in further consideration of the agreements of the first and second parties and the further consideration of delivery to third parties of ten (10) non-assessable shares of the aforementioned corporation, third parties agree to perform all legal services concerned in the zoning, development and corporate organization without cost to first and third (sic) parties or said corporation.
*12 6. The first parties in further consideration of the sum of Forty-Nine Thousand ($49,000.00) Dollars, and the agreements of second and third parties, and the delivery to first parties of forty-nine (49) non-assessable shares of the aforementioned corporation, agree to convey all their right, title and interest in and to the following described property to the aforementioned corporation. This agreement shall be binding on first parties, their heirs and assigns, administrators or executors. It is understood by and between the parties hereto that conveyance to the aforementioned corporation shall be within thirty (30) days after final zoning is complete of the following described property: Located in Fayette County, Kentucky, on the Southerly side of the Richmond Road about 2 1/2 miles East of the City of Lexington, and bounded and described as follows: Beginning at a point in the middle of the Richmond Road corner to Jim Given and 840 feet from the intersection of the Mt. Tabor and Richmond Roads; thence with the middle of the Richmond Road North 44 degrees West 1126 feet to Jones' line; thence with Jones' line for two calls South 53 3/4 degrees West 1281 feet to the line *13 of Stanhop; thence South 21 degrees 30 minutes East 1286 1/2 feet, corner to Given; thence with Given's line for five calls; North 49 degrees 20 minutes; East 1038 feet; thence South 44 degrees East 427 feet; North 45 degrees East 203 feet; North 44 degrees West 421 feet and North 49 degrees 20 minutes East 527.3 feet to the center line of Richmond Road and the point of beginning, containing 43.07 acres, more or less, and Being the same property conveyed to Eugene L. Gribbin and Beatrice L. Gribbin, his wife, by Irvine M. Byars and Ann L. Byars, his wife, by deed dated January 26, 1944, and of record in Deed Book 353, page 486 in the office of the Clerk of the Fayette County Court. There is also included in this conveyance such other described real property as conveyed to first parties and which may adjoin the above described property. [3]
7. It is contemplated by and between the parties hereto that the aforementioned corporation shall operate as a Chapter "S" Corporation for tax purposes. 8. It is agreed by and between second and third parties that the sum of *14 Forty-Nine Thousand ($49,000.00) Dollars to be paid to first parties upon conveyance of this property as set forth in Paragraph 6 hereof, shall be as follows: (1) The party of the second part shall pay to the parties of the first part the sum of $44,100.00. (2) The parties of the third part shall pay to the parties of the first part the sum of $4,900.00. WITNESS the hands of the parties this the day and year first above written. (There followed the signatures of the parties) On November 24, 1967, Carroll and Knippenberg (acting by Knippenberg) filed an application for a rezoning of the Gribbin property. This application was rejected on April 22, 1968. A second attempt to have the property rezoned was initiated by Knippenberg on May 24, 1968, and an ordinance granting this application was passed on July 18, 1968. Consequently, the following transactions were effected on August 28, 1968, in accordance with the contract set forth above: the Gribbins transferred the Gribbin property to Gribbin Enterprises, Inc. (Enterprise); petitioners each were issued a certificate evidencing ownership for five nonassessable shares of Enterprise stock; 49 nonassessable Enterprise *15 shares were issued to the Gribbins and 41 assessable shares to Lagrew. Thenceforth, the net worth of Enterprise was to consist solely of the Gribbin property. On November 29, 1968, Unit, Inc. (Unit), a corporation organized under the laws of the State of Texas and having its principal place of business in Dallas, Texas, proposed to purchase the Gribbin property for $705,000. [4] On December 6, 1968, the shareholders of Enterprise, responding to this offer through Carroll and Knippenberg, offered to sell all the shares of Enterprise to Unit for the same amount. On December 26, 1968, the management of Unit caused B & B Properties, Inc. (B & B) to be organized under the laws of the Commonwealth of Kentucky; and on February 12, 1969, B & B agreed to purchase all the shares *16 of stock in Enterprise issued and outstanding for $705,000. [5] The transaction was consummated on April 15, 1969, and Enterprise thereupon dissolved. The Gribbin property had not been improved while title to it was vested in Enterprise. By timely statutory notice dated April 6, 1972, respondent determined that each petitioner realized ordinary income in the amount of $32,800 upon receiving five shares of stock in Enterprise on August 28, 1968. ULTIMATE FINDINGS OF FACT The taxable income of the firm of Carroll and Knippenberg, a partnership, was increased by ordinary income in the amount of $40,925 when five shares of stock in Gribbin Enterprises, Inc., were issued to each of its members. OPINION Respondent contends that by reason of their each having received five shares of stock in Enterprise, petitioners each recognized ordinary income in the amount of $32,800. Petitioners contend to the contrary that they recognized no ordinary *17 income upon the receipt of the stock. In resolving this controversy, we shall first determine the fair market value of ten shares of Enterprise stock on August 28, 1968. As on that date the net worth of Enterprise consisted solely of the Gribbin property, ascertaining the value of that real estate is of paramount importance in valuing shares of Enterprise stock. Trianon Hotel Co., 30 T.C. 156 (1958);Drybrough v. United States, 208 F. Supp. 279 (W.D. Ky., 1962). Valuing real estate is the peculiar province of experts. It is therefore regrettable that the record herein is wholly bereft of expert testimony as to the value of the Gribbin property on August 28, 1968. The record does indicate, however, that in December, 1968, the Enterprise shareholders and parties with whom they dealt at arm's-length, were agreed upon $705,000 as the net worth of Enterprise. Furthermore, the contract which issued forth from their negotiations on February 12, 1969, established the aforesaid figure as the purchase price of the shares of Enterprise outstanding. As the Gribbin property was not improved between August 28, 1968, and February 12, 1969, we consider $705,000 *18 an appropriate starting point for our determination of the fair market value of ten shares of Enterprise stock on the former date. In re Williams Estate, 256 F.2d 217 (C.A. 9, 1958), affirming a Memorandum Opinion of this Court; Trianon Hotel Co., supra.Unlike the respondent, however, we do not consider that figure a conclusive determinant of value for the following reasons. [6] Firstly, $705,000 was initially agreed upon as the net worth of Enterprise more than three months after the petitioners had received their shares of stock in that corporation. Secondly, proposals for the purchase of Enterprise shares based upon that figure contemplated the possibility that a substantial portion of the purchase price would be paid over a span of several years' duration. Lastly, those same proposals contemplated the purchase of all of the shares of Enterprise outstanding, not of a mere 10 percent interest in the corporation. Having given due consideration to all of the circumstances delineated above, we hold that ten shares of Enterprise stock were worth $45,825 on August 28, 1968. Mathilde B. Hooper, Administratrix, 41 B.T.A. 114, 129 (1940); *19 Drybrough v. United States, supra.It remains to be determined whether petitioners each recognized ordinary income by reason of the receipt of five shares of Enterprise stock and, if so, in what amount. Under the contract of October 5, 1967, the firm of Carroll and Knippenberg undertook to perform all the legal services incident to the development of the Gribbin property including having the property rezoned. In consideration of the firm's having so undertaken, ten shares of stock in Enterprise were issued to petitioners (once the property had been rezoned) for $4,900, a price far below the fair market value of the ten shares. The consequence of this transaction in respect of the income tax liability of petitioners must therefore be as it would have been had ten shares been issued to the firm and then five shares been distributed by the firm to each petitioner. [7]
*20 Having held that on August 28, 1968, the fair market value of ten shares of Enterprise stock was $45,825 rather than $70,500 as contended by respondent, we do further hold that the excess of $45,825 over the amount paid for the ten shares by Carroll and Knippenberg ($4,900) constituted compensation to the firm for the legal services which it had agreed to perform under the contract of October 5, 1967, William H. Husted, 47 T.C. 664 (1967),section 1.61-2(d) (2) (i), Income Tax Regs.; that the firm's taxable income for 1968 was therefore increased by ordinary income in the amount of that excess, section 703(a); and that each petitioner's distributive share of the taxable ordinary income of the firm for 1968 was thereupon increased by 50 percent of the excess, section 702(a) (9). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as applicable to the years under consideration. ↩
2. Henceforth "petitioners" shall refer to Julian W. Knippenberg and James S. Carroll only. ↩
3. The property hereinabove described shall sometimes be referred to herein as the Gribbin property. ↩
4. The contract by Unit, provided for the payment of $5,000 as earnest money and of $65,500 at the time of the closing. The proposed balance of $634,500 was to be acknowledged in a promissory note providing for payment over a period of ten years (prepayment without penalty being permitted), bearing interest on the unpaid balance at the rate of 6 1/2 percent per annum and secured by the Gribbin property. ↩
5. In responding to Unit's offer, the Enterprise shareholders proposed that the purchase price be paid over a period of at most, seven years' duration. This proposal was incorporated into the contract of sale entered into by B & B. ↩
6. Respondent has determined that on August 28, 1968, the fair market value of each share of Enterprise stock was $7,050. ↩
7. SEC. 703. PARTNERSHIP COMPUTATIONS. (a) Income and Deductions. - The taxable income of a partnership shall be computed in the same manner as in the case of an individual * * * SEC. 702. INCOME AND CREDITS OF PARTNER. (a) General Rule. - In determining his income tax, each partner shall take into account separately his distributive share of the partnership's - * * * (9) taxable income or loss * * * SEC. 731. EXTENT OF RECOGNITION OF GAIN OR LOSS ON DISTRIBUTION. (a) Partners. - In the case of a distribution by a partnership to a partner - (1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution * * * ↩